UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BELLAGIO, LLC,<br><br>Plaintiff(s),<br><br>v.<br><br>BELLAGIO CAR WASH & EXPRESS LUBE, et al.,<br><br>Defendant(s). | Case No. 2:14-CV-1362 JCM (PAL)<br><br>ORDER |

Presently before the court is defendants Tri Star Auto Spa, Inc. ("Tri Star") and Kislev, Inc.'s ("Kislev") joint motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue. (Doc. # 24). Plaintiffs Bellagio, LLC ("Bellagio") and Mirage Resorts, Inc. ("Mirage") filed a joint response, (doc. # 28), and defendants filed a joint reply, (doc. # 30).

Also before the court is defendants' motion for temporary relief from local counsel requirement. (Doc. # 34). Plaintiffs have not filed a response.

**I.  Background**

This case arises out of defendants' use of the phrase "Bellagio Car Wash" and a stylized capital letter "B" on defendants' signage and website. Plaintiffs allege that defendants' conduct impairs the distinctiveness of plaintiffs' famous service marks.

Plaintiff Bellagio is a Nevada company that owns the Bellagio Hotel and Casino in Las Vegas, Nevada. Mirage is also a Nevada company and owns Bellagio, the hotel, and all intellectual property pertinent to these proceedings.

Defendant Tri Star owns and operates www.bellagiocarwash.com. Defendant Kislev owns and operates Bellagio Car Wash & Express Lube ("the car wash"). Both companies are owned by

**James C. Mahan**
**U.S. District Judge**

Arash Nourollah, are located in California, and operate entirely within California. (Doc. # 24-1). Neither company has a business license in Nevada nor employs a registered agent in Nevada. (*Id.*).

The Bellagio Hotel and Casino resort features nearly 4,000 hotel rooms, 100,000 feet of gaming space, luxury shopping and restaurants, spa services and many other amenities. Bellagio markets itself across the world in various ways, including the use of service marks. The three protected marks relevant to this proceeding are: (1) the word "Bellagio," (2) a stylized capital "B," and (3) "The B Bellagio," which is the word Bellagio in all capital letters superimposed on the stylized capital "B." (Doc. # 22 at 3-7).

The Bellagio Car Wash is in Lawndale, California, a suburb within Los Angeles County. The exterior signage for the carwash contains four rows of text. (Doc. # 22 at 8). The top row is the word "Bellagio" in all capital letters. (*Id.*). The second and third rows are the words "Car Wash" and "Express Lube" in capital letters that are superimposed over a stylized capital "B." (*Id.*). The final row is a phone number, area code 310. (*Id.*).

Plaintiffs initiated suit in this court on August 20, 2014. (Doc. # 1). Plaintiffs filed their first amended complaint on March 16, 2015. (Doc. # 22). Plaintiffs allege trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), and cyber-squatting, 15 U.S.C. § 1125(d).

Defendants filed the instant motion to dismiss on March 23, 2015, alleging lack of personal jurisdiction and improper venue. (Doc. # 24).

**II.     Legal Standard**

Personal jurisdiction over a defendant is proper when jurisdiction is provided for by law and the exercise of jurisdiction comports with due process. *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. § 14.065.

Due process requires the defendant have at least "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[T]he defendant's conduct and

James C. Mahan
U.S. District Judge

- 2 -

connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 134 S.Ct. at 1121.

In analyzing whether a defendant has sufficient minimum contacts with a forum state, courts distinguish between general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 414 n.8-9 (1984). General jurisdiction is appropriate where a defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant is essentially at home in the forum. *Daimler*, 134 S.Ct. at 754. "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Where general jurisdiction is not found, a court may still exercise specific jurisdiction if the defendant has sufficient minimum contacts with the forum state in relation to the cause of action. Specific jurisdiction allows a court to hear claims that arise out of a defendant's activities that are directed at the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). The Ninth Circuit has established a three-prong test for determining specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must arise out of or relate to defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs. *Id.* If a plaintiff meets this burden, a defendant hoping to defeat jurisdiction must show that the court's exercise of jurisdiction would be unreasonable. *Id.*

**James C. Mahan**
**U.S. District Judge**

Further, the plaintiff cannot be the defendant's only connection to the forum state. *Walden,* 134 S.Ct. at 1121. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 1122 (quoting *Burger King,* 471 U.S. at 478).

### III.     Discussion

When a motion to dismiss for lack of personal jurisdiction is based on written materials, "plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Uncontroverted allegations in the complaint are presumed true and factual disputes are resolved in plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Neither party asserts that general jurisdiction exists. Accordingly, the court will analyze whether defendants are subject to specific jurisdiction.

The Ninth Circuit treats purposeful availment and purposeful direction as separate methods of analysis. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort. *Schwarzenegger*, 374. F.3d at 802 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Because the instant suit sounds in tort, the court considers purposeful direction, also known as the "effects test." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

The effects test requires that the defendant allegedly must have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Wash. Shoe*, 704 F.3d at 673 (internal citations and quotations omitted). The key question is one of due process: would it be fair, based on defendants' contacts with Nevada, for them to expect to defend themselves in a Nevada court?

Defendants claim, and plaintiffs do not dispute, that the only advertising done for the car wash are print ads circulated within a three-mile radius of the car wash's location in California. (Doc. # 24-1). However, plaintiffs claim that the website advertises the carwash and is available to "anyone and everyone," including viewers in Nevada. (Doc. # 28).

**James C. Mahan**
**U.S. District Judge**

- 4 -

*1. Intentional acts*

The Ninth Circuit defines an intentional act in the context of personal jurisdiction as "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Wash. Shoe*, 704 F.3d at 674.

Here, defendants committed intentional acts. By naming their carwash "Bellagio Car Wash Express Lube" and erecting signage of this name superimposed over a scripted capital letter "B," defendants intentionally used these names and symbols in commerce. *See Wash. Shoe*, 704 F.3d at 674; 15 U.S.C. § 1125(c). Whether defendants knew that their commercial use of a name and symbol could dilute plaintiffs' famous marks is not relevant to the intentional act prong. *See Wash. Shoe*, 704 F.3d at 674.

Further, defendants' registration and use of their website www.bellagiocarwash.com, is also an intentional act. *See Wash. Shoe*, 704 F.3d at 674; 15 U.S.C. § 1125(d)(1)(A)(ii).

*2. Expressly aimed at the forum*

The "expressly aimed" prong asks whether the defendant directed an intentional act at the forum. *Schwarzenegger*, 374 F.3d at 806. Plaintiffs assert that defendants' commission of a tort (dilution of Bellagio's intellectual property), with knowledge that Bellagio resides in Nevada, satisfies the express aiming prong. Defendants assert that "something more" is required and that knowledge of an intellectual property owner's residence is not enough to support an express aim.

The Ninth Circuit's existing precedent applying "express aiming" to intellectual property claims is difficult to harmonize. Frequently cited language from *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 1997) *overruled on other grounds by Feltner v. Columbia Pictures Television,* 523 U.S. 340 (1998), states that knowledge of plaintiff's residency "alone is sufficient" to satisfy express aiming for an intentional tort claim. *Id.* at 289.

However, Ninth Circuit cases subsequently held that infringement of a plaintiff's intellectual property rights, with knowledge that the plaintiff's principal place of business was in

**James C. Mahan**
**U.S. District Judge**

- 5 -

the forum and that the harm would be felt there, was insufficient to establish personal jurisdiction.[1] *See Love v. Associated Newspapers, Ltd.,* 611 F.3d 601, 609 (9th Cir. 2010) ("Where a defendant's 'express aim was local,' the fact that it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test."); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156-57 (9th Cir. 2006) (holding that defendant did not expressly aim his passive website at California even though plaintiff alleged defendant intentionally infringed on its trademark with knowledge of its California residence); *Schwarzenegger*, 374 F.3d at 807 (holding that, even though the defendant may have known that plaintiff lived in California, "express aiming" was not satisfied by the defendant's unauthorized use of plaintiff's image in a newspaper advertisement circulated only in Ohio). This line of cases held that there must be a further showing that the defendant otherwise expressly aimed its activities at the forum. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 807.

Further, in *Walden v. Fiore*, the Supreme Court recently underscored the importance of a defendant's own, direct contacts with the forum state in the specific-jurisdiction analysis. 134 S.Ct. 1115, 1126 (2014). The Supreme Court held that a Nevada district court could not exercise specific jurisdiction over a Georgia police officer who, while working as a deputized DEA agent at a Georgia airport, searched a Nevada-bound couple and seized almost $97,000 in cash representing legitimate gambling proceeds. *Id.* at 1119. The officer then drafted in Georgia what was alleged to be a false and fraudulent probable cause affidavit to support a potential forfeiture action for the seized funds. *Id.* at 1124.

The Supreme Court held that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 1126. The Court found defendant's actions in Georgia

---

[1] Another court in this district has noted the "substantial tension—if not irreconcilable conflict"—existing between the language in *Columbia Pictures* and subsequent Ninth Circuit intellectual property opinions. *See Righthaven LLC v. S. Coast Partners, Inc.*, No. 2:10-CV-01062-LRH, 2011 WL 534046, at *2 (D. Nev. Feb. 8, 2011) (collecting cases); *see also Lang v. Morris*, 823 F. Supp. 2d 966, 971-72 (N.D. Cal. 2011) (quoting the above language from *Righthaven*). In *Lang*, the court discussed many of the Ninth Circuit cases on intellectual property personal jurisdiction. 823 F. Supp. 2d at 971-74. Footnote 2 reads, in part, "[t]his Court has been unable to find any case in which a court relied only on the defendant's knowledge of the plaintiff's residency (coupled with an allegation of copyright infringement or other tortuous conduct) in finding specific personal jurisdiction." *Id.* at 972 n.2.

1  "did not create sufficient contacts with Nevada simply because he allegedly directed his conduct
2  at plaintiffs whom he knew had Nevada connections." *Id.* at 1125. The Court continued, "[s]uch
3  reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those
4  connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of [the
5  officer's] challenged conduct had anything to do with Nevada itself." *Id.*

6        In sum, *Walden* clarified that "minimum contacts analysis cannot impermissibly [let]
7  plaintiff's contacts with the defendant and forum . . . drive the jurisdictional analysis." *Id.* at 1125
8  (internal quotations omitted).

9        Here, the intentional acts that form the basis of Bellagio's dilution claim were not directed
10 at Nevada. Defendants named their Los Angeles-based car wash "Bellagio Car Wash," and used
11 an allegedly dilutive symbol on their signage. Defendants advertised the car wash only in the Los
12 Angeles, California area. Defendants did not target Nevada in any meaningful way.

13       Further, even if plaintiffs could prove that a Nevada resident used the car wash, it would
14 not affect the jurisdictional analysis. Defendants' car wash is in Los Angeles, close to 250 miles
15 from the nearest Nevada border. Any Nevada residents that defendants served would be entirely
16 fortuitous and not appropriate for establishing minimum contacts. *See World-Wide Volkswagen*
17 *Co. v. Woodson*, 444 U.S. 286, 295 (1980).

18       Plaintiffs argue that defendants' continued use of words and symbols that allegedly dilute
19 plaintiffs' marks after receiving cease-and-desist letters is enough to establish personal jurisdiction
20 in Nevada. Plaintiffs argue that after being informed that the owners of the allegedly diluted
21 materials resided in Nevada, defendants expressly aimed their activities at Nevada. The court
22 disagrees.  As *Walden* clarified, it is the defendant who must create contacts with the forum state,
23 not the plaintiff or plaintiff's contact with the defendant. 134 S.Ct. at 1125-26.

24       Defendants' receipt of plaintiffs' cease-and-desist letters is not sufficient to "create
25 minimum contacts with the forum state." *See id.* Defendants knew the alleged injury would be felt
26 in Nevada following receipt of the cease-and-desist letter. However, defendants' relevant
27 commercial activity was always, and continues to be, only in the Los Angeles area. *See id.* at 1125
28 (injury to a forum resident is not a sufficient connection to the forum; injury is jurisdictionally

**James C. Mahan**
**U.S. District Judge**

- 7 -

relevant only insofar as it shows that the defendant formed a contact with the forum state). Defendants' commercial activity does not extend into Nevada.

Further, plaintiffs' argument that defendants' website extended the scope of their advertising into Nevada, thereby conferring jurisdiction in Nevada, is unavailing. Defendants' website does not target Nevada residents in any meaningful way, and is therefore an inadequate basis for jurisdiction.

Passive websites do not automatically confer jurisdiction anywhere they are viewable. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997). In order to establish jurisdiction based on a passive website, a plaintiff must show that a defendant's website or related activities directly targeted the forum through advertising or comparable affirmative conduct. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding defendant's targeted marketing to Nevada residents was "something more" than operating a passive website).

Defendants' website is passive. It lists the name, address, and phone number of the business in Los Angeles, California, and allows viewers to text a number to receive a coupon for their next car wash. (Doc. # 28). The website—as with any other publicly available website—is viewable in Nevada. However, defendants do not advertise to Nevada residents beyond offering a general coupon available to any customer. *Cf. Rio Props.*, 284 F.3d at 1020 (holding that defendant's local radio and print advertisements in Las Vegas, Nevada, were "something more" than operating a passive website). Therefore, the website does not satisfy the express aiming prong for the dilution claim or the cyber-squatting claim. *See Pebble Beach*, 453 F.3d at 1156-57; *Rio Props.*, 284 F.3d at 1020.

Plaintiffs failed to establish that defendants expressly aimed their activities at Nevada, a prerequisite for specific jurisdiction in this case. Accordingly, the court will dismiss the action for lack of personal jurisdiction.

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue, (doc. # 24), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion for temporary relief from local counsel requirement, (doc. # 34), be, and the same hereby is, DENIED as moot.

DATED July 1, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**